## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL CARSTETTER,** | : | **CIVIL ACTION NO. 1:06-CV-1993** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **ADAMS COUNTY TRANSIT** | : | |
| **AUTHORITY and YORK COUNTY** | : | |
| **TRANSIT AUTHORITY,** | : | |
| | : | |
| **Defendants** | : | |

### <u>MEMORANDUM</u>

Presently before the court is the report of the magistrate judge (Doc. 112), which recommends that the motion to dismiss or, alternatively, for summary judgment (Doc. 44), filed by defendant York County Transit Authority ("YCTA"), be granted in part and denied in party.  The report recommends similar disposition of the motion for summary judgment (Doc. 46) filed by defendant Adams County Transit Authority ("ACTA").  It recommends that the motion for summary judgment (Doc. 49) filed by plaintiff Daniel Carstetter ("Carstetter") be denied.  All parties have filed objections (Docs. 117, 118, 119) to the report.  For the reasons that follow, the report will be adopted in part and rejected in part.

I.     **Statement of Facts**[1]

YCTA is a municipal authority that provides general public transportation

throughout York County, Pennsylvania.  ACTA is also a municipal authority and

offers paratransit services in Adams County.  In 1996, YCTA and ACTA executed an

agreement under which YCTA agreed to manage ACTA's transportation network.

(Doc. 29, Ex. 1.) YCTA and ACTA have renewed this agreement every year since its

execution, and YCTA's management currently oversees Adams County

transportation services.  YCTA employs a general manager, who is responsible for

daily management of ACTA's transit services.  (Doc. 56, Ex. D at 9-11, 26; Doc. 59,

Ex. UU ¶ 11.)  However, the drivers, mechanics, and other personnel responsible for

ACTA's daily operations are employees of ACTA, which maintains a budget

separate from that of YCTA.

Until June of 2005 Carstetter served as a preventative maintenance mechanic

for ACTA.  The position primarily required him to perform routine maintenance on

ACTA vehicles and to handle basic repairs at ACTA's facilities.  (Doc. 56, Ex C. at

10-12.)  He also performed various other tasks as necessary.  (Id. at 12.)  His position

required him to drive ACTA vehicles occasionally for purposes such as test-driving

---

[1]In accordance with the standard of review applicable to a motion for
summary judgment, the court will present the facts in the light most favorable to
the non-movant with respect to each motion.  See infra Part II.
       The report of the magistrate judge provides a comprehensive description of
the facts relevant to the instant matter.  The court therefore recounts only those
facts necessary to facilitate disposition of the parties' legal objections and adopts
the facts more fully set forth in the magistrate judge's report.

after the performance of repairs or maneuvering vehicles into positions from which maintenance could be performed.  He had no passenger transport responsibilities, nor was he the only ACTA employee capable of driving vehicles for maintenance purposes.  (Doc. 80 ¶ 10.)  ACTA required him to obtain annual medical clearance from the Pennsylvania Department of Transportation, which is necessary to operate commercial vehicles on public roads.  Medical clearance was not required for Carstetter's maintenance duties, and ACTA did not require preventative maintenance mechanics to obtain clearance prior to 2000.  (Doc. 80 ¶¶ 5, 12.)

Carstetter suffers from diabetes, sleep apnea, depression, and anxiety.  (Id. 20.)  During early June 2005, he underwent a medical examination for the purpose of renewing his clearance, which expired on June 11.  (Doc. 51 ¶ 127; Doc. 56, Ex. O at 34 & attach. 8; Doc. 73 ¶ 127.)  The examining physician refused to certify Carstetter's clearance and required him to consult a pulmonary specialist. Carstetter scheduled an examination for July 2005 and informed Charmaine Wise ("Wise"), the ACTA general manager, that his appointment would not allow him to renew his medical clearance prior to June 11.  He did not believe that his failure to obtain medical clearance would be detrimental to his employment because he had previously received extensions for purposes of renewing medical clearance.  (See, e.g., Doc. 57, Ex. Q at 17-18; Doc. 58, Ex. KK at 7-8.)  He stated that other employees could drive ACTA vehicles as necessary until he obtained clearance, as often occurred when individuals were on sick leave or vacation.  (Doc. 80 ¶¶ 14-16.)  He also testified that medical clearance was not required for him to operate vehicles on

3

ACTA property.[2]  (Id. ¶ 12.)  The delay in Carstetter's re-certification had no effect on his ability to perform his maintenance duties.  (Id. ¶ 11.)

Upon learning of Carstetter's situation, Wise extended his compliance deadline to June 25, 2005, several weeks prior to his pulmonary specialist appointment.  (Doc. 56, Ex. K at 8.)  On June 20, 2005, Carstetter requested leave under the Family Medical Leave Act ("FMLA") and under ACTA's short-term disability benefits policy to enable him to seek medical treatment.  (Doc. 56, Ex. O at 27; Doc. 58, Ex. MM.)  He was never placed on FMLA leave; however, Wise placed him on short-term disability status, which provided him with benefits in an amount equal to approximately sixty percent of his regular income.  (Doc. 80 ¶ 21.)  On June 23, Carstetter applied for unemployment compensation to compensate for this forty percent decrease.  (Id.; Doc. 59, Ex. VV at 3.)  Wise received notice that Carstetter filed for unemployment compensation benefits on June 27 and interpreted the filing as a voluntary resignation of Carstetter's employment.  (Doc. 47, Ex. M ¶ 16.)  On June 30, she informed Carstetter that his employment had ended.  (Doc. 59, Ex. XX.)  He attempted to explain the alleged misunderstanding to Wise the following day to no avail.  (Doc. 53 ¶¶ 2-3; Doc. 54 ¶¶ 12, 14; Doc. 80 ¶ 21.)

Carstetter commenced the instant action on October 10, 2006, alleging that YCTA and ACTA violated his rights under various employment statutes the

---

[2]The court expresses no opinion about the validity of Carstetter's legal conclusion that medical clearance was not required for him to operate commerical vehicles on non-public roads.

Pennsylvania common law of wrongful discharge.  The case was referred to a

magistrate judge, before whom each party filed a motion for summary judgment.

The magistrate judge prepared a report recommending that YCTA and ACTA's

motions be granted in part and denied in part and that plaintiffs' motion be denied.

All parties have objected to this recommended disposition.  The motions are

presently before the court and are now ripe for disposition.

## II.   __Standard of Review__[3]

Through summary adjudication the court may dispose of those claims that do

not present a "genuine issue as to any material fact," and for which a jury trial

would be an empty and unnecessary formality.  See Fed. R. Civ. P. 56(c).  It places

---

[3]YCTA and ACTA object to the report on the ground that the section specifying the standard of review applicable to a motion for summary judgment fails to contain the following language: "[T]he non-moving party . . . must produce 'affirmative evidence beyond the allegations of the pleadings in support of its right to relief.'"  (Doc. 117 at 5 (quoting Smith v. ABF Freight Sys., 2007 WL 3231969, at *3 (M.D. Pa. Oct. 29, 2007)); see also Doc. 118 at 7.)

The standard of review referenced in the report appropriately represents the parties' summary judgment burden.  The report states:

> The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate an absence of a genuine issue of material fact. . . . *Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading*; rather, the nonmoving party must set out specific facts showing a genuine issue for trial.

(Doc. 112 at 9 (emphasis added; citations and internal quotations omitted)).  A review of the report indicates that the magistrate judge adopted the non-movants' factual allegations only insofar as they were supported them with "affirmative evidence beyond the allegations of the pleading."  Smith, 2007 WL 3231969, at *3.

the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see also</u> FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  <u>Pappas</u>, 331 F. Supp. 2d at 315.

## III.  **Discussion**

YCTA objects to the magistrate judge's report, asserting that it does not consider YCTA's alleged defense that Carstetter failed to exhaust his administrative remedies under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and the Pennsylvania Human Relations Act ("PHRA").  YCTA also objects to the report's denial of its motion to dismiss Carstetter's FMLA claim.

ACTA has also filed objections to the recommended disposition of the claims under the ADA, the FMLA, the Consolidated Omnibus Budge Reconciliation Act ("COBRA"), the Pennsylvania Wage Payment and Collection Law ("WPCL"), and the Pennsylvania common law of wrongful discharge.  Finally, Carstetter objects to the recommendation that his motion for summary judgment be denied with respect to his COBRA claim.  The court will address these objections categorically based on the statutes under which they are brought.

A.      **Failure to Exhaust Administrative Remedies for the ADA, RA, and PHRA Claims against YCTA**

YCTA objects to the report because it did not consider whether Carstetter exhausted administrative remedies applicable to his claims under the ADA, PHRA, and § 504 of the RA against YCTA.  YCTA moved to dismiss these claims on the basis that failure to exhaust deprives a federal court of subject matter jurisdiction to hear claims under these statutes.

The requirement that a plaintiff exhaust administrative remedies may be either prudential or jurisdictional in nature.  If exhaustion is jurisdictional, a court lacks subject matter jurisdiction to hear the claims of a plaintiff who fails to exhaust.  Wilson v. MVM, Inc., 475 F.3d 166, 174 (3d Cir. 2007).  By contrast, a plaintiff's failure to comply with prudential exhaustion furnishes the defendant with grounds for a motion filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure but has no effect on the court's subject matter jurisdiction.  Id.  In the instant matter, the report appropriately concluded that the failure to exhaust has no effect on the court's jurisdiction to hear claims under these statutes.  See id. at 175 (holding that exhaustion requirements of the RA are prudential in nature and have no effect on a court's subject matter jurisdiction); Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 261-62 (3d Cir. 2006) (holding same with respect to ADA); McFerron v. L.R. Costanso Co., No. 3:02CV1989, 2003 WL 22740938, at *1 n.2 (M.D. Pa. Sept. 10, 2003) (holding same with respect to PHRA).

YCTA requests that the court disregard the language of subject matter jurisdiction contained in its motion and evaluate its defense as if the defense were raised in a Rule 12(b)(6) motion or in a motion for summary judgment.  Both YCTA and Carstetter litigated YCTA's motion to dismiss— styled a motion for "dismiss[al] pursuant to F.R.C.P. No. 12(b)(1) and F.R.C.P. 56," (see Doc. 44)—as if it were a motion for summary judgment.  They filed exhibits and statements of material facts, as required for summary judgment motions pursuant to Local Rule 56.1.  (See Docs. 44, 45, 65, 67, 71.)  In light of this extensive briefing, the court finds that the exhaustion issue should be substantively addressed notwithstanding the unartful jurisdictional moniker assigned to it by YCTA.[4]  The court will therefore remand YCTA's motion to the magistrate judge for the exclusive purpose of evaluating its exhaustion defense as presented via a motion for summary judgment. [5]

_____

[4]Carstetter also opposes consideration of the exhaustion issue because YCTA previously raised it in opposition to Carstetter's motion for leave to file an amended complaint.  (See Doc. 22 at 14-15; Doc. 68 at 5.)  The order of court granting leave to amend contains no analysis of the exhaustion issue, (see Doc. 28), and a motion to amend simply does not provide a full and fair opportunity to litigate a significant defense such as exhaustion.  Accordingly, YCTA's invocation of the exhaustion issue to oppose Carstetter's motion to amend has no effect upon its ability to raise the same issue as a summary judgment defense.

[5]In light of the thorough record presently developed, it is likely that exhaustion can be addressed without further briefing by the parties.  Of course, nothing prevents the magistrate judge from requiring additional submissions if necessary to facilitate disposition of this issue.

**B.**   <u>**ADA Claims**</u>

ACTA objects to the recommendations of the magistrate judge with regard of Carstetter's ADA claim on two grounds.  First, it argues that Carstetter's ADA claim is estopped by his claim for social security benefits.  Second, ACTA alleges that Carstetter's disabilities prevented him from performing essential job functions and that accommodating his disabilities would place an undue hardship for ACTA.  The court will address these issues *seriatim*.

**1.**   <u>**Inconsistency between Carstetter's ADA Claim and Social Security Benefits**</u>

ACTA objects to the report, alleging that the recommended disposition of Carstetter's ADA claim is inconsistent with his receipt of social security disability benefits.  The ADA prohibits employment discrimination against a "qualified individual with a disability."  42 U.S.C. § 12112(a); <u>see also</u> <u>Buskirk v. Apollo Metals</u>, 307 F.3d 160, 166 (3d Cir. 2002).  A "qualified individual" is one who, "with or without reasonable accommodation," can perform "the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8); <u>see also</u> 29 C.F.R. § 1630.2(m).  In contrast, the Social Security Act ("SSA") protects only those individuals who are unable "to engage in *any* substantial gainful activity" due to a disability that is "of such severity that [they] are not only unable to do [their] previous work but cannot . . . engage in any other kind of substantial gainful work."  42 U.S.C. § 423 (d)(1)(A) & (d)(2)(A); <u>see also</u> <u>Sykes v. Apfel</u>, 228 F.3d 259, 262 (3d Cir. 2000).

Claims filed under the two statutes pose a risk of conflicting outcomes because the ADA requires that the plaintiff be able to work while the SSA requires that the plaintiff be incapable of doing so.  Nevertheless, claims under both statutes are not per se contradictory.  The ADA provides relief for a disabled plaintiff if the plaintiff's can perform the essential functions of the plaintiff's job either *with* or *without* a reasonable accommodation.  <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 803 (1999); <u>see also</u> 42 U.S.C. § 12111(8).  The SSA, however, does not consider the feasibility of accommodating disabilities and instead awards benefits when an individual cannot retain gainful employment *without* accommodation.  <u>Id.</u>; <u>see also</u> 42 U.S.C. § 423(d)(1)(A).  The individual's ability to work with accommodation plays no role in the SSA analysis.  <u>Id.</u>  "The result is that an ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with [a claim under the SSA if] the plaintiff could not perform her own job (or other jobs) *without* it."  <u>Id.</u>  A plaintiff may obtain recovery under both statutes if the plaintiff provides a "sufficient explanation" for contrary positions inherent between the two claims.  <u>Id.</u>  at 805-06; <u>see also</u> <u>Detz v. Greiner Indus., Inc.</u>, 346 F.3d 109, 115-21 (3d Cir. 2003).  If the plaintiff fails to provide an explanation for the discrepancies, representations made to obtain SSA benefits may estop the plaintiff from asserting a contrary position in a later ADA claim.  <u>See Ryan Operations G.P. v. Santiam-Midwest Lumber Co.</u>, 81 F.3d 355, 358 (3d Cir. 1996); <u>see also</u> <u>Jones v. Southcentral Employment Corp.</u>, 488 F. Supp. 2d 475, 481 (M.D. Pa. 2007).  This doctrine is known as judicial estoppel. <u>See Ryan Operations</u>

10

G.P., 81 F.3d at 358 (observing that the doctrine of judicial estoppel "prevent[s] a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding").  Judicial estoppel applies only to statements made by parties to the litigation in which the defense is raised, not to statements made by others.  See Greenway Ctr., Inc. v. Essex Ins. Co., 475 F.3d 139, 151 n.8 (3d Cir. 2007) ("The doctrine of judicial estoppel applies only if (1) the *party* against whom it is sought has taken a position inconsistent with a position previously taken; and (2) the *party* took either or both of the inconsistent positions in bad faith."  (internal quotations omitted, emphases added)).

In the instant matter, ACTA objects to the magistrate judge's conclusion that Carstetter's ADA claim is consistent with his receipt of SSA benefits.  ACTA argues that Carstetter's SSA benefits were awarded because he was found to be permanently disabled as a result of his medical conditions, precluding recovery under the ADA.  Its objections rest upon the medical opinions of third-party physicians that Carstetter was disabled, (Doc. 47, Ex. Y at 2) and the congruent conclusion of the Social Security Administration, (Doc. 47, Ex. CC at 7).

Carstetter has sufficiently explained the discrepancy between his SSA benefits and his ADA claim.  A questionnaire submitted by Carstetter in support of his SSA benefits claims states that he could operate a vehicle continuously for approximately thirty minutes, mow grass with a lawn tractor or push-style mower, place garbage bags on the curb for collection, unload grocery bags, and perform basic yard and automotive work.  (Doc. 47, Ex. DD at 14-15.)  He sometimes

11

required rest periods in order to perform certain tasks.  His employment duties

included tasks of a similarly demanding nature, such as basic vehicle repairs,

building maintenance, yard work, part purchasing, and updating vehicle records.

(Id. at 4; Doc. 56, Ex. C at 10.)

Carstetter's lengthy description of his physical abilities (which totals over

twenty pages) is consistent with his ADA claim.  The third-party statements upon

which ACTA bases its judicial estoppel argument have no preclusive effect because

they were not made by Carstetter, the party against whom ACTA seeks to assert

estoppel.[6]  A reasonable jury could therefore find that Carstetter received SSA

benefits on the basis that he was unable to perform strenuous job functions without

accommodation in the form of occasional rest periods.  The jury could likewise

conclude that Carstetter was able to perform his job duties if accommodated with

reasonable breaks, making him a "qualified individual with a disability" for

purposes of the ADA.

### 2.   Carstetter's Ability to Perform Essential Job Functions under the ADA

The ADA prohibits an employer from discriminating "against a qualified

individual with a disability because of the disability . . . in regard to job application

procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of

---

[6]Such statements may bear weight in the evidentiary inquiry into the consistency of Carstetter's SSA and ADA claims; however, they do not conclusively establish mutual exclusivity.

employment." 42 U.S.C. § 12112(a).  To establish a *prima facie* case of

discrimination under the ADA, a plaintiff must show:  "(1) he is a disabled person

within the meaning of the ADA; (2) he is otherwise qualified to perform the

essential functions of the job, with or without reasonable accommodations by the

employer; and (3) he has suffered an otherwise adverse employment decision as a

result of discrimination."  Benko v. Portage Area Sch. Dist., No. 06-3457, 2007 WL

2041977, at *2 (3d Cir. July 17, 2007) (citing Taylor v. Phoenixville Sch. Dist., 184

F.3d 296, 306 (3d Cir. 1999)).  Essential functions of a job "must be fundamental"

rather than "marginal."  See Conneen v. MBNA Am. Bank., N.A., 334 F.3d 318, 326

(3d Cir. 2003).  "The inquiry into whether a job requirement is essential to one's job

'is a factual determination that must be made on a case by case basis [based upon]

all relevant evidence.'"  Id. (quoting Deane v. Pocono Med. Ctr., 142 F.3d 138, 148

(3rd Cir.1998) (en banc)).  Written job descriptions, the employee's experience, and

the employer's description of essential functions all play a role in this analysis.  Id.

If a qualified individual with a disability is able to perform the essential functions of

a job, the employer must provide the individual with a reasonable accommodation

unless doing so would create an undue hardship for the employer.  Turner v.

Hershey Chocolate U.S., 440 F.3d 604, 614 (3d Cir. 2006).

ACTA objects to the report's conclusion that factual questions exist about

whether medical clearance was an essential function of Carstetter's job, whether

granting Carstetter an extension qualified as an undue hardship to ACTA, and

whether Carstetter was able to perform other purported essential job functions.[7]

Carstetter proffered evidence that he was not involved in the transportation of

passengers, that other employees were available to operate vehicles when necessary

for maintenance purposes, and that ACTA had previously permitted him to work

for limited periods without a current medical clearance.  (See  Doc. 51 ¶ 128 Doc. 80

¶¶ 4-5, 10, 12, 16; Doc. 71 ¶ 128.)  Viewing this evidence in the light most favorable to

Carstetter, a reasonable jury could conclude that obtaining medical clearance was

not an essential function of the his job as a preventative mechanic and that an

extension of time for him to do so would not have constituted an undue hardship to

ACTA.

Notwithstanding this conclusion, ACTA argues that social security officials

determined that he was unable to engage in gainful employment.  (Doc. 117 at 9;

Doc. 47, Ex. CC at 7.)  ACTA deduces that Carstetter would therefore have been

unable to perform the physical activity necessary to his job as a mechanic.  As

discussed in Part III.B.1, supra, Carstetter stated in his social security

---

[7]The precise nature of this objection is unclear, and ACTA argues merely that the report "focuses on the Essential Functions of Carstetter's position and the full discussion of the same is set forth in Defendant's Brief in Support of its Motion for Summary Judgement as to the hardship under [sic] the employer ACTA of any accommodations, as to the job duties of mechanics, etc."  (Doc. 117 at 8.)  ACTA fails to specify whether it objects to the magistrate judge's analysis of the essential functions or the undue hardship associated with accommodating Carstetter's disability.  Much of the confusion could have been alleviated had counsel specified the basis of ACTA's objection and complied with Local Rule 7.8(a), which prohibits a brief from "incorporat[ing] by reference all or any portion of any other brief." L.R. 7.8(a).

questionnaire that he successfully performed a variety of household tasks consistent with his ability to perform the essential functions of his position. ACTA's arguments raise issues regarding Carstetter's credibility, but they are insufficient to resolve all factual disputes regarding his physical abilities. Accordingly, the report of the magistrate judge will be adopted, and ACTA's motion for summary judgment on the ADA claim will be denied.[8]

### C.    FMLA Claims

The FMLA was enacted to "balance the demands of the workplace with the needs of families." 29 U.S.C. § 2601(b)(1); Conoshenti v. Pub. Serv. Elec. & Gas, Co., 364 F.3d 135, 141 (3d Cir. 2004). It provides that certain employees may take "reasonable leave for medical reasons," 29 U.S.C. § 2601(b)(1), (2), Conoshenti, 364 F.3d at 141, including any "serious health condition that makes the employee unable to perform the functions of [his or her] position," 29 U.S.C. § 2612(a)(1)(d); Chittister v. Dep't of Cmty. & Econ. Dev., 226 F.3d 223, 225 (3d Cir. 2000).

Two causes of action may arise from a violation of the FMLA: an "interference" claim, alleging that the employer interfered with a FMLA right, and a "retaliation" claim, alleging that the employer took an adverse employment action against the employee in retaliation for taking FMLA leave. See Bearley v. Friendly,

---

[8]ACTA raises identical arguments to Carstetter's disability claim under the PHRA, the analysis for which is identical to that under the ADA. See Bauchsbaum v. Univ. Physicians Plan, 55 F. App'x 40, 42, n.1 (3d Cir. 2002). ACTA's motion for summary judgment on the PHRA disability claim will therefore be denied for reasons identical to those discussed above.

322 F. Supp. 2d 563, 570-71 (M.D. Pa. 2004); <u>Parker v. Hahnemann Univ. Hosp.</u>, 234

F. Supp. 2d 478 (D.N.J. 2002).  In the matter *sub judice*, ACTA objects to the

recommended denial of its motion for summary judgment on both claims.  YCTA

objects to the report's conclusion that a genuine factual dispute exists about

whether it qualifies as Carstetter's joint employer under the act.

1.    **FMLA Interference**

To succeed on a FMLA interference claim, a plaintiff must demonstrate that

he or she was entitled to and denied some benefit under the FMLA.  <u>See</u> <u>Bearley</u>,

322 F. Supp. 2d at 570-71.  The burden then shifts to the employer to show that the

plaintiff would have been ineligible for the benefit notwithstanding the plaintiff's

FMLA leave request.  <u>See</u> <u>id.</u>

Under the FMLA, an employee is entitled to be reinstated to his or her

former, or an equivalent, position upon returning from leave.  29 U.S.C. § 2614(a)(1);

<u>Conoshenti</u>, 364 F.3d at 141.  However, the right to reinstatement is qualified; it

does not entitle an employee to a right, benefit, or position to which the employee

would not "have been entitled had the employee not taken the leave."  29 U.S.C.

§ 2614(a)(3)(B); <u>Conoshenti</u>, 364 F.3d at 141.  The employer need not reinstate the

employee if the employee is unable to perform the essential functions of the

position upon return from FMLA leave.  <u>See</u> 29 C.F.R. § 825.214(b) (stating that

employee unable to perform an essential function of the job has no right to

restoration under the FMLA); <u>Conroy v. Twp. of Lower Merion</u>, 77 F. App'x 556, 559

(3d Cir. 2003) (reiterating that the FMLA does not require the employer to provide

16

an employee returning from leave with a reasonable accommodation to facilitate the employee's return to work); <u>Rinehimer v. Cemcolift, Inc.</u>, 292 F.3d 375, 384 (3d Cir. 2002) (stating that employee must demonstrate ability to perform essential functions of the position to which he was not reinstated).

In the instant matter, Carstetter was denied continued benefits upon his leave of absence in late June 2005.  (<u>See</u> Doc. 58, Ex. FF ¶ 10; Doc. 58, Ex. GG ¶ 11; Doc. 80 ¶¶ 23, 33.)  He was never reinstated to his former position.  ACTA claims that Carstetter is not entitled to recover for FMLA interference because his medical conditions prevented him from performing the essential functions of his position, which include the ability to obtain medical clearance.

Carstetter has raised a genuine issue of material fact regarding his ability to perform the essential function of his job as a preventative maintenance mechanic.  Carstetter's social security disability application stated that with occasional breaks he was able to perform housework, do yard work, lift items of up to fifty pounds, and carry items of up to twenty pounds.  He could also operate vehicles for approximately thirty minutes without a break.  (Doc. 47, Ex. DD at 14-15.)  He stated that his pastimes included working on vehicles, which he continued to pursue during his illness.  (<u>Id.</u> at 15.)  He was able to perform the essential functions of his job—such as replacing tires, changing engine fluids, washing vehicles, sweeping, and other maintenance duties—without accommodation.  (Doc. 47, Ex. B at 35-36, 49, Doc. 47, Ex. BB ¶ 10.)  He requested FMLA leave in order to address the obstacles to his medical re-certification, which a reasonable jury could conclude

was not an essential function of his job.  <u>See</u> <u>supra</u> Part III.B.2.  Despite previous

difficulties renewing his clearance, he had never been unable to fulfill his job

responsibilities.  Hence, Carstetter has proffered evidence raising a genuine factual

issue about his ability to perform the essential functions of his job unaccommodated

after return from FMLA leave.  The report of the magistrate judge will be adopted

with respect to this claim, and ACTA's motion will be denied.[9]

---

[9]This conclusion is not inconsistent with Carstetter's ADA claim.  The ADA
protects individuals with *disabilities* and imposes on employers the obligation to
provide employees with an *immediate* accommodation of a disability.  42 U.S.C.
§ 12112(a).  The FMLA operates based on *serious health conditions* and requires
that, after an employee takes leave, the employer reinstate the employee *in the
future* provided that the employee is able to work without accommodation.  29
U.S.C. § 2612(a)(1)(D); Chapman v. UPMC Health Sys., 516 F. Supp. 2d 506, 521
(W.D. Pa. 2007) (observing that the FMLA contains no requirement that an
employer provide a reasonable accommodation to facilitate an employee's return to
employment).  Our sister court for the Western District of Pennsylvania has
explained that the protection afforded by these two statutes must be analyzed
separately:

> We have often stated "[d]isability is a term of art under the ADA."
> Doyal v. Okla. Heart, Inc., 213 F.3d 492, 495 (10th Cir. 2000). In
> contrast, the leave provisions of the FMLA are wholly distinct from the
> statutory definition of "disability" and an employer's reasonable
> accommodation obligations covered under the ADA.  As courts have
> recognized in various contexts, "there may be some parallels between
> the ADA and FMLA, but applicable regulations explicitly state that
> ADA's 'disability' and the FMLA's 'serious health condition' are
> different concepts, and must be analyzed separately."  Hurlbert v. St.
> Mary's Health Care Sys., Inc., 439 F.3d 1286, 1295 (11th Cir.2006).

Chapman, 516 F. Supp. 2d at 533 (quoting Berry v. T-Mobile USA, Inc., 490 F.3d
1211, 1219-20 (10th Cir. 2007) (additional citations and footnote omitted).  Hence, the
employee's need for accommodation of a disability under the ADA does not
automatically implicate a serious medical condition rendering the employee eligible
for FMLA leave, nor does an employee's continued ADA disability preclude
reinstatement if the employee's serious medical condition no longer prevents the
employee from working without accommodation.  See Conroy, 77 F. App'x at 559
(3d Cir. 2003) (stating that an employer need not accommodate an employee's
serious medical condition upon return from leave).

## 2.   FMLA Retaliation

The FMLA prohibits an adverse employment action taken in retaliation for an employee's FMLA leave.  See Victorelli v. Shadyside Hosp., 128 F.3d 184, 190 (3d Cir. 1997).  To assert a retaliation claim a plaintiff must demonstrate that:  (1) he or she took FMLA leave, (2) he or she suffered an adverse employment action, and (3) the adverse action was causally related to the leave.  Conoshenti, 364 F.3d at 146.

When a plaintiff presents "direct evidence" that his FMLA leave was a substantial factor in the adverse employment action, the burden shifts to the employer to demonstrate that the action would have taken place even if the FMLA leave was not considered in the decision-making process.  Id. at 147 (citing Fakete v. Aetna, Inc., 308 F.3d 335, 338 (3d Cir. 2002)).  "Direct evidence" is evidence that would suffice to allow a jury to find that the employer placed "substantial negative reliance" on the taking of FMLA leave in deciding to impose the adverse employment action.  Id. at 147 n.10 (citing Conners v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998)).  Absent direct evidence, timing can be used to infer a causal connection between the leave and the adverse action, although it requires consideration "with a careful eye to the specific facts and circumstances encountered."  See Parker, 234 F. Supp. at 492 n.15 (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-80 (3d Cir. 2000)).  If the timing is not "unduly suggestive," causation may still be inferred from circumstantial evidence of ongoing antagonism or inconsistent reasons for the action.  See id.

When the burden is shifted, the employer must demonstrate that it would have taken the same action for nondiscriminatory reasons.  However, it need not isolate the sole cause for its decision.  <u>Conshoshenti</u>, 364 F.3d at 147; <u>Bearley</u>, 322 F. Supp. 2d at 572.  Thereafter, the plaintiff can demonstrate that the employer's proffered reason is pretextual and rebut it by either (1) discrediting the reason circumstantially or directly , or (2) adducing evidence that discrimination was more likely than not a motivating or determinative cause of the action.  <u>See</u> <u>Bearley</u>, 322 F. Supp. 2d at 571-73; <u>see also</u> <u>Parker</u>, 234 F. Supp. 2d at 487.

In the instant matter, the magistrate judge concluded that Carstetter established a prima facie case and that ACTA successfully articulated a legitimate non-discriminatory reason for termination, namely that it believed Carstetter had voluntarily resigned.  The magistrate judge further concluded that Carstetter raised a genuine issue of material fact with respect to pretext, presenting evidence that ACTA should have known that he did not intend to resign.  (<u>See</u> Doc. 112 at 59-62.)  ACTA objects to the pretext recommendation, arguing that Carstetter proffered inadequate evidence to support the magistrate judge's conclusion.

Carstetter requested forms to apply for FMLA leave and short-term disability benefits on June 20, 2005.  (Doc. 56, Ex. O at 27; Doc. 58, Ex. MM.)  He also applied for unemployment compensation benefits with the Pennsylvania Department of Labor and Industry.  His leave of absence began on June 22, and Wise receive notice of his unemployment application on June 27.  (Doc. 47, Ex. M ¶ 16; Doc. 59, Ex. VV at 2, 4.)  On June 29, Wise completed an unemployment questionnaire

issued by the Department in which she represented that Carstetter had taken a leave of absence and had applied for short-term disability benefits.  (Doc. 59, Ex. VV at 4.)  She also stated that, at the time of his short-term disability application, "it was my understanding that his situation would be temporary until treatment of his condition qualified him for the DOT medical cert[ification]."  (Id. at 5.)  On June 30 Wise nevertheless informed Carstetter that his application for unemployment compensation "le[ft her] no other choice but to believe you never intended to try to obtain your DOT medical certification and wish to resign your position with us."  (Doc. 59, Ex. XX.)  Carstetter responded on July 1, stating that he applied for unemployment benefits to compensate for lost wages that ACTA's short-term disability policy would not cover.  (Doc. 54 ¶ 12; Doc. 80 ¶ 21.)  He allegedly informed Wise that he never intended to resign his position.  (Doc. 47, Ex. M ¶ 27; Doc. 53 ¶ 3; Doc. 54 ¶ 14.)

Based on this evidence, a reasonable jury could conclude that the conflict between Carstetter's requests for short-term disability and unemployment compensation should have caused Wise to question whether Carstetter intended to

permanently resign his employment.[10]  When Wise informed Carstetter that she interpreted his action as a resignation, he immediately acted to correct the misunderstanding, but Wise maintained that he had voluntarily ended his employment.  Hence, a jury could conclude that Wise's asserted belief that Carstetter had voluntary resigned was a pretext for FMLA retaliation.  The report of the magistrate judge will be adopted and ACTA's motion for summary judgment will be denied with respect to Carstetter's FMLA retaliation claim.

3.    **Joint Employment**

YCTA objects to the magistrate judge's report, which recommends that the court deny its motion for summary judgment on Carstetter's FMLA claim. Carstetter advances an FMLA claim against YCTA on the basis that he qualifies as

---

[10]Section 825.312(e) of Title 29 of the Code of Federal Regulations lends further support to this conclusion.  That section provides, in pertinent part, that "[i]f an employee unequivocally advises the employer either before or during the taking of [FMLA] leave that the employee does not intend to return to work, and the employment relationship is terminated, the employee's entitlement to continued leave, maintenance of health benefits, and restoration ceases."  29 C.F.R. § 825.312(e).  The conflicting implications of Carstetter's disability and unemployment applications are hardly the unequivocal resignation contemplated by the regulations when terminating an employee such as Carstetter, who had requested FMLA leave.  See id.; Smyth v. Wawa, Inc., No. Civ. A. 06-4474, 2008 WL 741036, at *6 (E.D. Pa. Mar. 19, 2008).

a joint employee of both YCTA and ACTA.[11]  An individual will generally be a joint

employee of multiple entities if he or she

> performs work which simultaneously benefits two or more employers,
> or works for two or more employers at different times during the
> workweek[. A] joint employment relationship generally will be
> considered to exist in situations such as:

> (1)     Where there is an arrangement between employers to share an
>         employee's services or to interchange employees;

> (2)     Where one employer acts directly or indirectly in the interest of
>         the other employer in relation to the employee; or,

> (3)     Where the employers are not completely disassociated with
>         respect to the employee's employment and may be deemed to
>         share control of the employee, directly or indirectly, because one
>         employer controls, is controlled by, or is under common control
>         with the other employer.

---

[11]YCTA objects to the report on the grounds that it "does not indicate whether it addressed both the single employer theory / [sic] or the joint employer theory." The joint employer test and the single employer test (also known as the integrated employer test) present alternative grounds for liability under the FMLA. The joint employer test imposes liability when two distinct entities "simultaneously benefit[ from the services of] two or more employees" or when the employees "work[] for two or more employers at different times during the workweek." See 29 C.F.R. § 825.106(a). The extent of a particular employer's liability depends upon whether it qualifies as a "primary employer" of the employee. See id. § 825.106(c), (e). The integrated employer test imposes equal liability upon two or more entities that, in reality, function as a single, monolithic employer. See id. § 825.104(c)(2) (identifying factors to be considered under the integrated employer test); see generally Grace v. USCAR & Bartech Technical Servs., 521 F.3d 655, 664-66 (6th Cir. 2008) (distinguishing integrated employers from joint employers). In the instant matter, Carstetter predicates YCTA's FMLA liability solely upon the joint employer test, and neither his pleadings nor summary judgment filings allege liability under the integrated employer test. Accordingly, the failure of the magistrate judge's report to discuss YCTA's liability under this particular test is immaterial.

29 C.F.R. § 825.106(a).  "In joint employment relationships, only the primary employer is responsible for giving required notices to its employees, providing FMLA leave, and maintenance of health benefits."  Id. § 825.106(c).  "Job restoration is the primary responsibility of the primary employer.  The secondary employer is responsible for accepting the employee returning from FMLA leave."  Id. § 825.106(e).

The joint employment inquiry presents a question analyzed in light of the totality of the factual evidence.  See NLRB v. Browning-Ferris Indus., 691 F.2d 1117, 1121 (3d Cir. 1982) (finding that joint employment under National Labor Relations Act is a question of fact); Zavala v. Wal-Mart Stores, Inc., 393 F. Supp. 2d 295, 329 (D.N.J. 2005) (holding that joint employment is a question of law under Fair Labor Standards Act, regulations under which define "joint employment" in a manner identical to those under the FMLA); see also Dinkins v. Varsity Contractors, Inc., No. , 2005 WL 599979, at *6-8 (N.D. Ill. Mar. 10, 2005) (addressing FMLA joint employment inquiry as an issue of fact).  Relevant considerations include, *inter alia*, whether the defendant has the ability to fire the employee, to control the employee's schedule, to determine the employee's compensation rate, and to maintain employment records.  See 29 C.F.R. § 825.106(c); Zavala, 393 F. Supp. 2d at 329-330 & n.26; see also Zheng v. Liberty Apparel Co., 355 F.3d 61, 67 (2d Cir. 2003).

In the instant matter, Carstetter has demonstrated that the senior managers of ACTA's transportation system are employed, appointed, and compensated by

YCTA.  (Doc. 29, Ex. 1 ¶¶ 3(c), (d), 6, 9.)  YCTA allegedly maintains workers'

compensation and bonding insurance for ACTA's employees, and ACTA's health

plan is registered as a subgroup of a policy maintained by YCTA.  (Id. ¶ 14(a); Doc.

57, Ex. Z at 17-18, 25-26.)  ACTA and YCTA share coordinated dispatch, radio, and

maintenance systems, and ACTA's board of directors plays little part in establishing

its employees' compensation rates, a matter largely overseen by YCTA.  (Doc. 56,

Ex. G at 13-14; Doc. 80 ¶ 25.)  The general manager of ACTA is an employee of

YCTA but allegedly has authority to hire and terminate ACTA employees.  (Doc. 56,

Ex. D at 11, 34; Doc. 56, Ex. G at 18-19.)  The general manager reports both to the

ACTA board and to YCTA's executive director.  (Doc. 56, Ex. D at 9-11, 26; Doc. 59,

Ex. UU ¶ 11.)  The general manager also bears responsibility for approving ACTA's

payroll and is occasionally responsible for logging ACTA employees' hours in the

payroll system.  (Doc. 56, Ex. A at 136; Doc. 57, Ex. Q at 30.)

　　　YCTA disputes the extent of the general managers' influence over ACTA

operations, and notes that YCTA expends no funds on ACTA's behalf.  (See, e.g.,

Doc. 45, Ex. E; Doc. 45, Ex. F; Doc. 45, Ex. G at 45.)  The parties' disparate

allegations regarding ACTA and YCTA's shared control and common management

of Carstetter's employment reflect a factual dispute about whether they are joint

employers.  See 29 C.F.R. § 825.106(a)(3) (stating that two entities may qualify as

joint employers if they "share control of the employee, directly or indirectly,

because one employer controls, is controlled by, or is under common control with

the other employer"); see also Grace v. USCAR & Bartech Technical Servs., 521

F.3d 655, 666-677 (6th Cir. 2008) (observing that factors such as common control, responsibility for daily supervision, and control over payroll guide the joint employer analysis under the FMLA); Martin v. Univ. Alarm Sys., No. Civ. A. 91-6372, 1992 WL 210045, at *2 (E.D. Pa. Aug. 21, 1992) (applying similar factors in joint employment analysis under the Fair Labor Standards Act).  Accordingly, the report of the magistrate judge will be adopted, and YCTA's motion to dismiss will be denied with respect to Carstetter's FMLA claims.

###   D.   COBRA Claim

All parties have filed cross-motions for summary judgment on Carstetter's claims under the Public Health Service Act, ("PHSA"), as amended by COBRA. COBRA requires that public employees who participate in a group health plan be offered continued insurance coverage when they would otherwise lose it as a result of various "qualifying event[s]."  See 42 U.S.C. § 300bb-1(a) (requiring employers to offer continuation coverage upon occurrence of a qualifying event); id § 300bb-3 (enumerating qualifying events).  The employee may be required to pay the insurance premium for continuation coverage.  See id. § 300bb-2(3) Termination of employment, whether voluntary and involuntary, is a qualifying event under COBRA.  Id. § 300bb-3(2).  A plan is exempt from COBRA obligations if all employers participating in the plan employed fewer than twenty individuals during the preceding calendar year.  See id. §§ 300bb-1(b)(1).

Employers must notify employees of their COBRA rights at the time coverage under the plan commences, and the employer must inform the plan administrator

of the occurrence of a qualifying event.  Id. § 300bb-6(1), (2).  The plan administrator

must, in turn, provide notice of the employee's (or other beneficiary's) right to

participate in continuation coverage under COBRA.  See id. § 300bb-6(2), (4).  A

qualified beneficiary who becomes eligible for Medicare under Title XVIII of the

Social Security Act during the period of continuation coverage may have his or her

COBRA insurance terminated in favor Medicare coverage.  See id. § 300bb-

2(2)(D)(ii).  An employee whose COBRA rights are violated "may bring an action for

appropriate equitable relief."  Id. § 300bb-7.

In the instant matter, Carstetter contends that he never received COBRA

notifications from either ACTA or the plan administrator, a YCTA employee.  The

defendants do not dispute these allegations.  (Doc. 51 ¶ 152; Doc. 73 ¶ 152.)  Rather,

ACTA moves for summary judgment on Carstetter's COBRA claim, asserting that

his receipt of social security disability benefits renders him ineligible for COBRA

and that he seeks legal relief not authorized by the statute.  The former argument is

meritless because Carstetter applied for social security benefits under Titles II and

XVI of the Social Security Act.  (See Doc. 47, Ex. CC at 4.)  Only Medicare benefits

obtained under Title XVIII of the Act have preclusive effect for under COBRA.

Hence, Carstetter's disability benefits do not foreclose his COBRA rights.[12]

---

[12]Receipt of benefits under Titles II and XVI entail certain restrictions on
eligibility for COBRA benefits inapplicable to the instant matter.  See 42 U.S.C.
§ 300bb-2(2)(E).

Accordingly, ACTA is not entitled to summary judgment on the basis of Carstetter's social security benefits.

ACTA also contends that Carstetter has demanded only legal relief, which is not recoverable under COBRA.  Relief under COBRA is limited to "those categories of relief that were *typically* available in equity," such as injunctive remedies and equitable restitution.  Great-W. Life & Ann. Ins. Co. v. Knudson, 534 U.S. 204, 210-16 (2002); see also Thomas v. Town of Hammonton, 351 F.3d 108, 115 (3d Cir. 2002).  Traditional legal remedies, such as compensatory damages for breach of contract or fiduciary duty, cannot be recovered under COBRA.  See Knudson, 534 U.S. at 713 ("A claim for money due and owing under a contract is quintessentially an action at law." (citation omitted)); Mertens v. Hewitt Assocs., 508 U.S. 248, 256-58 (1993) (holding that compensatory damages were not recoverable under provisions of the Employee Retirement Income Security Act ("ERISA") that authorize "appropriate equitable relief" and are substantially similar to § 300bb-7);[13] Santasania v. Union Travel Trades Benefit Funds of Cent. Pa., No. 3:01-CV-1442, 2003 WL 256778, at *3 (M.D. Pa. Feb. 4, 2003) ("[A] beneficiary's claim for insurance money she claimed

---

[13]COBRA creates rights to continuation coverage under both ERISA, which applies to private employers, and under the PHSA, which applies to public ones. The COBRA amendments to both statues authorize "appropriate equitable relief;" however, its provisions under ERISA have been more frequently litigated than those under the PHSA.  Compare 29 U.S.C. § 1132(a)(3)(B), with 42 U.S.C. § 300bb-7.  The court has therefore evaluated cases addressing the ERISA amendments as persuasive authority for the interpretation of similar provisions under the PHSA.

she would have received if not for fiduciary's breach of duty was a claim for legal

relief, which <u>Knudson</u> forecloses.").

        In the instant matter, Carstetter seeks damages for (1) the value of lost

benefits and consequential damages, (2) out-of-pocket medical expenses that would

have been covered by insurance had he participated in a COBRA plan, (3) payment

of funds that ACTA would have expended for COBRA coverage had he received it,

and (4) payment of future insurance premiums.  He also requests that ACTA make

future coverage available to him via its group health plan.  (Doc. 82 at 10-11; Doc.

125 at 12-13.)  The court will analyze each of these demands to determine whether it

qualifies as equitable relief under COBRA.

        Carstetter's request for compensatory and consequential damages is clearly a

demand for relief at law.  <u>See</u> <u>Knudson</u>, 534 U.S. at 210; <u>In re Unisys Corp. Retiree</u>

<u>Med. Benefit ERISA Litig.</u>, 57 F.3d 1255, 1268 (3d Cir. 1995) (stating that

"appropriate equitable relief" under ERISA does not include compensatory

damages).  These damages are not cognizable in equity, and summary judgment

will be granted in favor of ACTA to the extent Carstetter seeks such recovery.

        Carstetter contends that the remaining claims for relief are forms of

equitable restitution.  (Doc. 82 at 10-11.)  Restitution may be either equitable or

legal in nature "depend[ing] on the basis for the plaintiff's claim and the nature of

the underlying remedies sought."  <u>Knudson</u>, 534 U.S. at 213 (citation and internal

quotations omitted).  Restitution payable out of a defendant's general assets is a

form of legal relief not cognizable in equity.  <u>Knudson</u>, 534 U.S. at 213; <u>Sackman v.</u>

<u>Teaneck Nursing Ctr.</u>, 86 F. App'x 483, 485 (3d Cir. 2003) (stating that imposition of mere "personal liability" constitutes legal relief).  In constrast, restitution payable out of particular property or from a discrete fund in the defendant's possession is equitable in nature.  <u>Knudson</u>, 534 U.S. at 213; <u>Michaels v. Breedlove</u>, No. 03-4891, 2004 WL 2809996, at *2 (3d Cir. Dec. 8, 2004); <u>Sackman</u>, 86 F. App'x at 485 (denying a plaintiff's demand for relief under ERISA provision authorizing "appropriate equitable relief," because the plaintiff could not "identify a specific block of money" to which it was entitled).  "Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."  <u>Knudson</u>, 534 U.S. at 214; <u>Michaels</u>, 2004 WL 2809996, at *2 (observing that equitable restitution may be applied only to property "traced to particular funds or property in the defendant's possession").

Here, Carstetter's claim for unpaid medical benefits fails to qualify as equitable restitution because Carstetter seeks to impose liability against ACTA's general assets rather than against a discrete, limited fund in its possession.  <u>See Alberti v. Ron Lewis Auto. Group</u>, No. 2:05CV100, 2006 WL 2773254, at *7 (W.D. Pa. Sept. 12, 2006) (holding that a monetary demand for "unpaid medical benefits" constitutes legal relief not recoverable as "appropriate equitable relief" under ERISA); <u>see also</u> <u>Horvath v. Keystone Health Plan E., Inc.</u>, 333 F.3d 450, 457 n.3 (3d Cir. 2003) (stating that equitable restitution is unlikely to be available if there are "no funds readily traceable" to the plaintiff); <u>Negley v. Breads of the World Med.</u>

31

<u>Plan</u>, 222 F. App'x 692, 694 (10th Cir. 2007) (holding that a claim for "lost benefits"
seeks compensatory damages and is therefore not recoverable as "appropriate
equitable relief"); <u>Amschwand v. Spherion Corp.</u>, 505 F.3d 342, 348 (5th Cir. 2007)
("Obtaining lost policy proceeds . . . is not equitable in derivation, but is akin to the
legal remedies of extracontractual or compensatory damages." (citation and
footnote omitted)).

   Carstetter's demands that ACTA pay him amounts it would have expended
on his COBRA coverage[14] and future insurance premiums are likewise legal in
nature.  Carstetter has cited no case supporting his demand for such awards, which
would inevitably impose only general liability on ACTA.  The court's independent
research has also produced no support for Carstetter's demands.  Moreover, a
monetary award for these claims could serve only two purposes:  it would either
compensate Carstetter for the deprivation of COBRA benefits or it would punish
ACTA for failure to apprise him of his COBRA rights.  Compensatory and punitive
damages of this nature are simply not recoverable in equity.  <u>See</u> <u>Knudson</u>, 534 U.S.
at 713 ("Almost invariably . . . suits seeking (whether by judgment, injunction, or
declaration) to compel the defendant to pay a sum of money to the plaintiff are suits
for 'money damages,' . . . since they seek no more than compensation for loss

_____

   [14]Carstetter's demand for sums that ACTA would have expended to procure
COBRA coverage on his behalf presumes that ACTA would have contributed to the
premiums associated with continuation coverage.  COBRA does not require an
employer to bear such costs, <u>see</u> 42 U.S.C. § 300bb-2(3), and the parties have not
provided evidence regarding whether ACTA would have born responsibility for any
costs associated with continuation coverage had Carstetter requested it.

resulting from the defendant's breach of legal duty." (first omission in original, citation omitted)); Mertens, 508 U.S. at 256-58 & n.8 (noting that compensatory and punitive damages are not compensable as equitable relief); Varsity Corp v. Howe, 516 U.S. 489, 510 (1996) (same).

Carstetter has, however, requested that ACTA provide him with access to future health coverage.  The court finds that this demand is reasonably construed as a request for equitable enforcement of his COBRA rights, and ACTA's motion for summary judgment will be denied to the extent Carstetter seeks such relief.[15]

### E.   Wrongful Discharge

Under Pennsylvania law, all employment is performed at will absent an employment contract to the contrary.  See Rothrock v. Rothrock Motor Sales, Inc., 883 A.2d 511, 512 n.1 (Pa. 2005).  This policy generally prevents at-will employees, who are subject to termination at any time, from advancing a wrong discharge claim.  Id. at 515.  Nevertheless, Pennsylvania courts permit wrongful discharge claims if "allowing an employer to discharge an at-will employee would threaten a clear public policy."  Davenport v. Reed, 785 A.2d 1058, 1063 (Pa. Commw. Ct. 2001); see also Howell v. PPL Servs. Corp., 232 F. App'x 111, 113-14 (3d Cir. 2007); Pro v.

---

[15]The court will also deny Carstetter's motion for summary judgment because he has not specified what form of equitable relief (injunctive or otherwise) he seeks, nor has he described the scope, duration, or extent of any such relief.  Moreover, the court will be in a far better position to craft appropriate equitable relief after a jury has resolved the numerous factual issues present in this case.  The court expresses no opinion on the recommendation that Carstetter's motion for summary judgment be denied because he did not address whether the plan administrator failed to notify him of his COBRA rights.  (See Doc. 112 at 74).

Donatucci, 81 F.3d 1283, 1299 (3d Cir. 1996); Rothrock, 883 A.2d at 515.  An

employer violates public policy if it discharges an employee for requesting

unemployment or workers' compensation benefits, participating in jury service, or

refusing to submit to a polygraph examination.  Rothrock, 883 A.2d at 515

(collecting case); Davenport, 785 A.2d at 1063 (same).

In the instant matter, Carstetter claims that ACTA wrongfully terminated his

employment because he applied for unemployment benefits.  ACTA responds that it

is entitled to summary judgment because, at the time Wise ended Carstetter's

employment, she believed that he had voluntarily resigned his position.  As

discussed in Part III.C.2, Carstetter has adduced evidence from which a reasonable

jury could conclude that this was a pretext for Carstetter's termination.  A

reasonable jury could conclude that Carstetter's application for unemployment

benefits motivated his termination in contravention of public policy.  See

Highhouse v. Avery Transp., 660 A.2d 1374, 1378 (Pa. Super Ct. 1995) (holding that if

an employer discharges an employee "during a period when [the employee] was not

working and earning income, the discharge will constitute a violation of public

policy and will support a tort claim for wrongful discharge").  Accordingly, ACTA's

motion for summary judgment on the wrongful discharge claim will be denied.

**F.    Wage Payment and Collection Law**

The WPCL, provides that a terminated employee is entitled to payment of

any unpaid pre-termination wages "not later than the next regular payday of his

employer on which such wages would otherwise be due and payable."  43 PA. STAT.

ANN. § 260.5(a).  The WPCL applies to any "person, firm, partnership, association, corporation, [or] . . . officer of a court," id. § 260.2a para. 5, and authorizes private civil actions to recover unpaid wages and liquidated damages, id. §§ 260.9a(b), 260.10.  Pennsylvania state and federal courts have repeatedly exempted municipal corporations such as ACTA from the WPCL's reach because such entities are not enumerated within the statute's definition of "employer."  See Porter ex rel. Philipsburg-Osceola Educ. Ass'n v. Philipsburg-Osceoloa Area Sch. Dist., 633 A.2d 220, 223 (Pa. Commw. Ct. 1993) (quoting Huffman v. Borough of Millvale, 591 A.2d 1137, 1139 (Pa. Commw. Ct. 1991)) ("[T]here is a clear distinction between municipal and private corporations and, if the legislature wished that municipal corporations be covered by the [Wage] Law, it could have easily included them." (second alteration in original)); see also Capo v. Pittsburgh Bd. of Pub. Educ., No. 2:04cv1473, 2007 WL 760513, at *7 (W.D. Pa. Mar. 8, 2007); Wagner v. Tuscarora Sch. Dist., No. 1:04-CV-1133, 2005 WL 2319141, at *7 (M.D. Pa. Sept. 21, 2005) (observing that school districts are not subject to the WPCL); Gallaher v. Goldsmith, 213 F. Supp. 2d 496, 498-99 (E.D. Pa. 2002) (holding that municipal corporations are not subject to the WPCL).  Neither the Pennsylvania Supreme Court nor the United States Court of Appeals for the Third Circuit have addressed this issue.

In the absence of a binding pronouncement from these courts, the magistrate judge concluded that the Pennsylvania Supreme Court would apply the WPCL to municipal corporations notwithstanding lower court precedent to the contrary. ACTA objects to this recommendation in light of the numerous cases reaching the

35

opposite conclusion.  The court is unable to adopt the report with respect to this

issue.  The Pennsylvania Commonwealth Court has exempted municipal entities

from the WPCL since it first confronted this issue in 1991,[16] see Philipsburg-Osceola

Educ. Ass'n, 633 A.2d at 223; Huffman, 591 A.2d at 1139, and this court—as well as

our sister courts for the Eastern and Western Districts of Pennsylvania—have

followed its approach.  See Wagner, 2005 WL 2319141, at *7; see also Capo, 2007 WL

760513, at *7; Chatterjee v. Sch. Dist. of Phila., 170 F. Supp. 2d 509, 518 (E.D. Pa.

2001).  Moreover, Carstetter has not cited any case since 1991 that applied the

WPCL to a municipal corporation, and the court's independent research has

produced none.[17]  In light of this clear jurisprudential trend, the court concludes

that municipal authorities are exempt from the WPCL.  ACTA's motion for

summary judgment on Carstetter's WPCL claims will be granted.

IV.     **Conclusion**

        The above-captioned matter will be remanded to the magistrate judge for the

purpose of evaluating YCTA's exhaustion defense with regard to the claims under

---

        [16]Some Pennsylvania trial courts exempted municipal corporations from the
WPCL prior to the Commonwealth Court's 1991 pronouncement on the issue.  See,
e.g., Ujevich v. City of Clairton, 1 Pa. D. & C. 4th 66, 67 (Pa. Ct. Com. Pl. Allegheny
County 1988).

        [17]The only case that Carstetter offers in support of his position is the 1963
case Gingrich v. City of Lebanon, 32 Pa. D & C. 2d 726 (Pa. Ct. Com. Pl. Lebanon
County 1963).  The court has not identified any case that followed the holding of
Gingrich with respect to the WPCL.

the ADA, PHRA, and § 504 of the RA against it.[18]  The report will be adopted and

ACTA's motion for summary judgment will be denied with respect to the

Carstetter's claims under the ADA, FMLA, and WPCL.  The court will also deny

ACTA's motion for summary judgment on the COBRA claim to the extent that

Carstetter seeks equitable relief, as well as Carstetter's motion for summary

judgment on the COBRA claim.[19]  YCTA's motion for summary judgment under the

FMLA will also be denied.

     The report will be rejected and ACTA's motion for summary judgment will

be granted on Carstetter's COBRA claim to the extent that he seeks legal relief in

the form of monetary damages.  A similar disposition will be entered on Carstetter's

claim under the WPCL.

     An appropriate order follows.


                    S/ Christopher C. Conner
                    CHRISTOPHER C. CONNER
                    United States District Judge

Dated:       July 8, 2008

---

[18]Two motions in limine (Docs. 102, 104) and a motion to bifurcate (Doc. 100)
the trials of ACTA and YCTA are presently outstanding.  These motions will be
denied without prejudice.  The court will issue a revised pretrial schedule that will
incorporate a new deadline for motions in limine.

[19]The magistrate judge also recommended that defendants' motions for
summary judgment be granted with respect to Carstetter's claims under § 503 of the
RA, 29 U.S.C. § 793 and under 42 U.S.C. § 1983.  The magistrate judge
recommended a similar disposition for Carstetter's breach of contract claim against
YCTA and that Carstetter's motion for summary judgment be denied with respect
to the FMLA, WPCL, and wrongful discharge claims.  None of the parties have
objected to these recommendations.  The court has reviewed the magistrate judge's
report and will adopt the disposition of these claims recommended therein.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANIEL CARSTETTER,** | : | **CIVIL ACTION NO. 1:06-CV-1993** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **ADAMS COUNTY TRANSIT** | : | |
| **AUTHORITY and YORK COUNTY** | : | |
| **TRANSIT AUTHORITY,** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 8th day of July, 2008, upon consideration of the report and

recommendations (Doc. 112) of the magistrate judge, to which objections were filed,

(<u>see</u> Docs. 117, 118, 119), and for the reasons set forth in the accompanying

memorandum, it is hereby ORDERED that:

1.  The report (Doc. 112) is REJECTED in part and ADOPTED in part as
    follows:

    a.  The report (Doc. 112) is REJECTED to the extend that it
        recommends that the motion for summary judgment of
        defendant Adams County Transit Authority ("ACTA") be denied
        on plaintiff's claims under the Pennsylvania Wage Payment and
        Collection Law ("WPCL") and for legal damages under the
        Consolidated Omnibus Budget Reconciliation Act of 1985
        ("COBRA").

    b.  The report (Doc. 112) is ADOPTED in all other respects.

2.  The motion to dismiss (Doc. 44) is GRANTED in part, DENIED in part,
    and REMANDED in part:

    a.  The motion (Doc. 44) is GRANTED with respect to plaintiff's
        claims under 42 U.S.C. § 1983, under § 503 of the Rehabilitation
        Act, 29 U.S.C. § 793, and for breach of contract.

      b.      The motion is DENIED with respect to Carstetter's joint employment claim under the Family Medical Leave Act.

      c.      The motion is REMANDED to the magistrate judge for further consideration of YCTA's exhaustion defense with respect to plaintiff's claims under § 504 of the Rehabilitation Act, 29 U.S.C. § 794; the Americans with Disabilities Act; and Pennsylvania Human Relations Act.

3.      The motion for summary judgment (Doc. 46) of ACTA is GRANTED in part and DENIED in part as follows:

      a.      The motion is GRANTED with respect to plaintiff's claims under 42 U.S.C. § 1983, the WPCL, and § 503 of the Rehabilitation Act and for legal damages under COBRA.

      b.      The motion is DENIED in all other respects.

4.      The motion for summary judgment (Doc. 49) filed by plaintiff is DENIED.

5.      The above-captioned matter is REMANDED to the magistrate judge for further consideration of YCTA's exhaustion defense as described in Paragraph 2.a.

6.      The outstanding motion to bifurcate trial (Doc. 100) and motions in limine (Docs. 102, 104) are DENIED without prejudice to the parties' right to re-file them upon resolution of YCTA's exhaustion defense.

7.      The clerk of court is instructed to defer entry of judgment until the conclusion of this case.

8.      A revised pretrial and trial schedule shall be issued upon resolution of YCTA's exhaustion defense.

 

          S/ Christopher C. Conner
          CHRISTOPHER C. CONNER
          United States District Judge